IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **Miminco, LLC,** *et al.*, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. |
| **Democratic Republic of the Congo,** | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF PETITION TO CONFIRM ICSID ARBITRATION
AWARD PURSUANT TO 22 U.S.C. § 1650a AND ENTER JUDGMENT**

John Jay Range (Bar No. 376028)
Thomas C. Goodhue (Bar No. 336571)
HUNTON & WILLIAMS LLP
2200 Pennsylvania Avenue, NW
Washington, DC  20037
(202) 955-1500 (Phone)

*Counsel for Petitioners*

Petitioners Miminco LLC, John Dormer Tyson, and Ilunga Jean Mukendi ("Petitioners"), by and through their attorneys, Hunton & Williams LLP, respectfully submit this memorandum of law and the accompanying declarations of Dr. Mukendi and Neal Robertson in support of their petition to confirm a foreign arbitration award pursuant to 22 U.S.C. § 1650a.

## I.     INTRODUCTION

Petitioners request this Court to confirm an arbitration award (the "Consent Award") rendered by a three-member arbitral panel constituted pursuant to Chapter IV of the Convention on the Settlement of Investment Disputes Between States and Nationals of Other States (the "ICSID Convention") in ICSID Case No. ARB/03/14. The Democratic Republic of Congo ("DRC") *negotiated* the terms of the Consent Award; represented it would *promptly pay* the amounts due under the Consent Award in exchange for a substantial reduction in the amount sought as damages by the Petitioners; and the Consent Award was issued by the Tribunal only upon *agreement* of the parties. To date, the DRC has paid only a very small portion of the Consent Award, and still owes more than $11.5 million of the principle amount, as well as accumulated interest. Under 22 U.S.C. § 1650(a), the DRC has no colorable grounds upon which to contest recognition of the Award in this case. This Award should be confirmed—as indeed it already has been by courts in three other nations.

## II.    BACKGROUND

Miminco, SPRL owns two diamond mining concessions in the territory of Tshikapa, Province of Western Kasia in the Democratic Republic of the Congo ("DRC"). Miminco LLC, in turn, holds 51% of Miminco, SPRL. In 1996, a civil war broke out in the country, during which the concessions were invaded, looted, attacked, and illegally exploited by Congolese civil and military officials. Declaration of Ilunga Jean Mukendi (hereinafter, "Mukendi Decl.") ¶ 3.

2

A bilateral investment treaty between the United States and the DRC (the "BIT") entitles United States companies and citizens who invest in the DRC and have their investment expropriated or damaged during war to seek compensation.  The process for recouping damages for violation of treaty obligations is set forth in Article VII of the BIT, through which the United States and the DRC consented to have such disputes submitted for binding arbitration or conciliation to the International Centre for the Settlement of Investment Disputes ("ICSID").

To vindicate its rights under the BIT, and receive compensation for the losses sustained to Miminco's concessions during the civil war, Petitioners submitted a request for arbitration to ICSID against the DRC on September 12, 2002.  Mukendi Decl. Exhibit 1 (Consent Award in *Miminco LLC v. Democratic Republic of the Congo*, ICSID Case No. ARB/03/14), ¶ 1.  ICSID registered the request, and notified the parties of the request for arbitration on June 9, 2003.  *Id*. ¶ 2.  Consistent with the ICSID Convention, the BIT, and the applicable ICSID Arbitration Rules, a three-member arbitral panel (the "Tribunal") was constituted on September 17, 2004.  *Id*. ¶ 4.  Shortly thereafter, the DRC's counsel informed the Tribunal that it would not challenge the Tribunal's jurisdiction.  *Id*. ¶ 7.

Instead, the parties held a settlement conference in Paris, which was attended by the President of the Tribunal.  At the conference, the Parties signed a document entitled "Settlement Agreement."  *Id*. ¶ 11-12.  In the Settlement Agreement, the DRC agreed to pay Petitioners $15 million in compensation "for all of the losses sustained by it due to the acts committed by the Congolese civil and military authorities."  *Id*. ¶ 23.  The Agreement was to be effective when the Congolese government formally approved it.  *Id*.  During that approval process, the parties engaged in further negotiations with "a view to reducing the amount of USD 15,000,000."  *Id*. ¶ 24.  In a "Report of Negotiations with a View to the Amicable Settlement of the Dispute Relating

to Investments Between the Democratic Republic of the Congo and Miminco, L.L.C. *et al*.," Petitioners agreed to reduce the settlement amount to $13 million, and the DRC formally approved the settlement.  *Id*. ¶¶ 24-25.

The Settlement Agreement and the Report were memorialized in a Consent Award signed by all three members of the Tribunal, and dispatched to the parties on November 19, 2007. Mukendi Decl. ¶ 7.  The incorporation of the Settlement Agreement and Report into a formal award was consistent with ICSID Rule 43(2), which provides that "the parties may file with the Secretary-General the full and signed text of their settlement and in writing request the Tribunal to embody such settlement in an award, [and] the Tribunal may record the settlement in the form of its award."  The Consent Award notes that it was rendered "[i]n accordance with the agreement of the Parties."  Mukendi Decl. Exhibit 1, ¶ 25.  When it was issued, it became a final, binding award.  *See* ICSID Convention Art. 54(1).

The DRC has not paid the full amount of the Consent Award, and still owes more than $11.5 million.  Mukendi Decl. ¶ 14.  Petitioners have diligently attempted to collect the amount due.  In June 2009, Petitioners advised the DRC that if it did not pay the amount due, they would seek to enforce the Consent Award and undertake collection activities.  *Id*. ¶ 8.  In response, Petitioners made their one and only voluntary payment on November 11 of that year—$1.3 million, only 10% of the amount due.  *Id*. ¶ 10.  In correspondence regarding that payment, the DRC noted that it was the "first payment" for the $13 million Consent Award, thus further acknowledging the validity of the Consent Award.  Mukendi Decl. Exhibit 2 (October 6, 2009 Letter from the César Lubamba Ngimbi).

Nevertheless, Petitioners have had to undertake collection efforts around the world. Mukendi Decl. ¶ 15-16.  To that end, Petitioners have had the Consent Award recognized by all

three jurisdiction in which confirmation has been sought—France, Belgium, and South Africa. *Id*. ¶ 16. The DRC has not contested confirmation of the Award in any of these proceedings. *Id*.

Through its collection efforts, Petitioners garnished 167,316.15 South African Rands on September 30, 2013. *Id*. Petitioners' bank promptly moved to obtain exchange control authority, and converted the amount to US $114,531.74 on November 12, 2013. *Id*. But, after seven years, the DRC still owes Petitioners US $11,585,468.26, and accrued interest. *Id*. The Award should be confirmed in the United States so that Petitioners can attempt to collect the full amount they are due. Additionally, Petitioners should be awarded interest on the principle at the rate of 8% compounded annually, and their reasonable attorneys' fees and costs in this confirmation proceeding.

### III.   ARGUMENT

The Consent Award is unassailable, and its enforcement should be automatic. By statute, "[t]he pecuniary obligations imposed by such an award *shall be enforced* and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a (emphasis added). The language is clear: the Consent Award's pecuniary obligations "shall be enforced" and given full faith and credit. In this case, the pecuniary obligations are straightforward. Initially, Petitioners sought $35 million in the arbitration. Mukendi Decl. Exh. 1, ¶ 23. Upon DRC's promise of prompt payment, however, the parties negotiated a settlement of $13 million. *Id*. The terms of that settlement were memorialized in the Consent Award. The DRC acknowledged its pecuniary obligations after the Award had issued by making an initial payment of $1.3 million. Mukendi Decl. ¶ 8. But after seven years, the DRC *still* owes $11,585,468.26 of the $13 million Consent Award, plus interest. As a matter of equity, interest should be awarded at rate of 8%, as contemplated by

the parties. Further, Petitioners should be awarded their reasonable attorneys' fees and costs in this action.

    A.    **The Consent Award Should be Confirmed**

The Consent Award was issued by the Tribunal, which was properly constituted under the ICSID Convention and the applicable ICSID Arbitration Rules.  The DRC did not challenge the Tribunal's jurisdiction, and, indeed, agreed to the terms of the Consent Award.  *See* Mukendi Decl.. Exh. 1.  There is no question that there is a valid, binding award.

As a valid, binding award issued by an ICSID tribunal pursuant to the ICSID Convention, it must be recognized in the United States.  The ICSID Convention entered into force in the United States in 1966, shortly after its ratification.  *See* United States Department of State, Treaties in Force 2013, 408, *available at* http://www.state.gov/s/l/treaty/tif/index.htm.  Article 54(1) of the Convention provides:

> Each Contracting State shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State. A Contracting State with a federal constitution may enforce such an award in or through its federal courts and may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state.

Congress has provided for the recognition of ICSID Awards, as the Convention requires, through 22 U.S.C. § 1650a, which states:

> An award of an arbitral tribunal rendered pursuant to chapter IV of the convention shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States. The Federal Arbitration Act (9 U.S.C. 1 et seq.) shall not apply to enforcement of awards rendered pursuant to the convention.

Because of these provisions, federal courts routinely and summarily confirm ICSID awards as a matter of course.  *See Duke Energy Int'l Peru Investments No. 1 Ltd. v. Republic of Peru*, No. 11-1602(JEB) (D.D.C. Nov. 19, 2012); *Funnekotter v. Republic of Zimbabwe*, No. 09-Civ-8168(CM) (S.D.N.Y. Feb. 1, 2010); *Sempra Energy Int'l v. Argentine Republic*, No. M-82 (S.D.N.Y. Nov. 14, 2007); *Enron Corp. and Ponderosa Assets L.P. v. Argentine Republic*, No. M-82 (S.D.N.Y. Nove. 20, 2007).  Likewise, the Consent Award here—to which the DRC has never objected and in fact agreed—is entitled to recognition.

### B.     Petitioners Should be Awarded Interest

Petitioners should be awarded post-award interest to compensate them for the many years that the DRC has failed to pay the amount due under the Consent Award.  "'The purpose of such awards is to compensate the plaintiff for any delay in payment resulting from the litigation.'"  *Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 932 F. Supp. 2d 153, 163 (D.D.C. 2013) (citing *Oldham v. Korean Air Lines Co., Ltd.,* 127 F.3d 43, 54 (D.C. Cir. 1997).  "'Therefore, absent any reason to the contrary, prejudgment interest should normally be awarded when damages have been liquidated by an international arbitral award.'"  *Cont'l Transfert Technique Ltd.*, 932 F. Supp. 2d at 163-64 (quoting *Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1447 (11th Cir. 1998)).  Indeed, a "presumption exists in favor of such interest."  *Cont'l Transfert Technique Ltd.*, 932 F. Supp. 2d at 163.

This court has discretion to determine the interest rate to apply to Petitioners' pre-judgment, post-award interest.  *Id*. at 164.  Here, the most reasonable interest rate to apply is the rate reflecting the parties' expectations—8%.  Although the Award does not expressly provide for interest, DRC records reflect its expectation of an 8% rate, a fact conveyed to Petitioners on several occasions.  Mukendi Decl. ¶ 10; *see also* Mukendi Decl. Exhibit 3 (table dated November

11, 2009); Exhibit 4 (Letter dated March 25, 2010); Exhibit 5 (Settlement Proposal dated October 25, 2011). In Exhibit 5, the DRC's 2011 written settlement proposal calculated the amount of interest that had accrued on the total amount of the Award to that point in time using an 8% interest rate. Thus, it is clear that an 8% interest rate would best accord with the parties' expectations.

The DRC owed $13 million from November 19, 2007 to November 13, 2009, when it made a payment of $1.3 million. Mukendi Decl. ¶ 9. The DRC owed $11.7 million from November 14, 2009 to November 12, 2013. *See id*. ¶¶ 9, 12. Following the November 12, 2013 conversion of the garnishment to U.S. dollars, the DRC continues to owe principal on the award in the amount of $11,585,468.26. *Id*. ¶ 17. Accounting for these payments, and calculating interest on the Award in the amount of 8% compounded annually, the DRC owes a total of $8,581,879 in interest. Declaration of Neal Robertson ¶ 5. Between the filing of this Petition, and the date that judgment is entered, interest will continue to accrue daily. Accordingly, Petitioners will file an updated calculation setting forth the total interest due as of the date that judgment is entered so that the final judgment order in this case accurately reflects total accrued pre-judgment interest. Once the Court enters judgment, interest should accrue at the statutory state applicable to federal court judgments pursuant to 28 U.S.C. § 1961. *See Cont'l Transfert Technique Ltd.*, 932 F. Supp. 2d at 165. This is reflected in the proposed Judgment Order Petitioners have submitted to the Court.

### C.      Petitioners Should be Awarded Reasonable Attorneys' Fees and Costs

In attempting to confirm the Consent Award, Petitioners have incurred attorneys' fees and costs. An award of attorneys' fees is appropriate because the respondent "'simply ignored the validity of the Arbitration Award and sought to avoid payment.'" *Concesionaria*

*Dominicana de Autopistas y Carreteras, S.A. v. Dominican State*, 926 F. Supp. 2d 1, 2 (D.D.C. 2013) (quoting *Ministry of Def. & Support v. Cubic Def. Sys.*, 2013 WL 55828, at *6 (S.D. Ca. Jan. 3, 2013). When a respondent has unjustifiably failed to abide by an international arbitral award, this Court has awarded attorneys' fees and costs. *Concesionaria Dominicana de Autopistas y Carreteras*, 926 F. Supp. 2d at 2. Seven years have passed and the DRC still owes more than $11.5 million of the original $13 million Consent Award. Petitioners have dutifully sought to enforce the Award, and garnish money from the DRC, by having the Award recognized in three countries on two continents. Because of the DRC's obstinacy, Petitioners now must attempt to confirm this Award in the United States, thus incurring expenses it should not have to bear. Petitioners should receive the reasonable fees and costs they have incurred because of the DRC's recalcitrance and failure to comply to with its international obligations.

## IV.   CONCLUSION

Petitioners respectfully request that the Court confirm the ICSID Consent Award, enter a final judgment in favor of the Petitioners in the full, unpaid amount of the Consent Award plus pre-judgment interest, provide that post-judgment interest is to accrue at the statutory rate, and award Petitioners reasonable attorneys' fees and costs incurred in this action.

Dated this 24th day of November 2014.

                                    MIMINCO, LLC, JOHN DORMER TYSON, and ILUNGA JEAN MUKENDI

                                    By: /s/  John Jay Range
                                                  Counsel

John Jay Range (Bar No. 376028)
Thomas C. Goodhue (Bar No. 336571)
jrange@hunton.com
tgoodhue@hunton.com
HUNTON & WILLIAMS LLP
2200 Pennsylvania Avenue, NW
Washington, DC  20037
(202) 955-1500 (Phone)
(202) 778-2201 (Fax)

*Counsel for Petitioners*